UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Criminal No. 15-165(1) (JRT/LIB) |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER DENYING 28 U.S.C. § 2255 MOTION UNDER SEAL |
| OMAR SHARIF BEASLEY, | |
| Defendant. | |

Deidre Y. Aanstad, **UNITED STATES ATTORNEY'S OFFICE**, 300 South Fourth Street, Suite 600, Minneapolis, MN  55415, for plaintiff.

Omar Sharif Beasley, No. 09867-041, FCI Fairton, P.O. Box 420, Fairton, NJ 08320, *pro se* defendant.

Defendant Omar Sharif Beasley is serving a 300-month term of imprisonment. Beasley has filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that his counsel provided ineffective assistance. Because Beasley has not demonstrated ineffective assistance of counsel, the Court will deny Beasley's Motion.

**BACKGROUND**

**I.     LEGAL REPRESENTATION OF BEASLEY AND JONES**

Caroline Durham first began representing Beasley in an unrelated drug case in December 2010. (ECF No. 10-246, Docket No. 4.)  When Beasley was arrested in April 2015 in connection with what would become the present case, Durham again represented

him.  (Mot. to Vacate at 2, May 20, 2019, Docket No. 2848; Gov't Opp'n. at 2, 8, Sept. 3, 2019, Docket No. 2913.)  Durham also represented Beasley in several proffer sessions with the government in connection with the present case.  (Mot. to Vacate at 2; Gov't Opp'n at 8.)  In the course of cooperating, Beasley named more than 60 individuals who had assisted him in trafficking drugs, including an individual named Damien Jones.  (Mot. to Vacate at 2, Gov't Opp'n at 8.)  Beasley alleges that after he named Damien Jones, Durham stopped Beasley, informed him that there could be a conflict of interest, and told Beasley that she would not represent Jones and would instead represent only Beasley.  (Mot. to Vacate at 2.)

Durham had previously represented Damien Jones.  Durham began representing Jones in an unrelated firearm case in October 2011.  (ECF No. 11-297, Docket No. 5.)  Jones was sentenced in that case in May 2012.  (ECF No. 11-297, Docket No. 36.)  After Jones was sentenced, Durham ceased her representation of Jones until November 5, 2015, when Jones was alleged to have violated his supervised release in the firearm case.  (ECF No. 11-297, Docket Nos. 35–36, 85.)  Durham then represented Jones in connection with a revocation hearing from November 5, 2015 through December 2, 2015.  (ECF No. 11-297, Docket Nos. 85, 93–94.)  Durham has not subsequently represented Jones.  (*See* ECF No. 11-297.)

In May 2015, a grand jury issued an indictment for Beasley and 40 co-defendants.  (Indictment, May 20, 2015, Docket No. 1.)  Damien Jones was not charged.  (*Id.*)  Durham did not represent Jones in connection with the present case.

In August 2015, Durham, representing Beasley, filed a Motion for Suppression of Unlawful Search relating to the traffic stop where Beasley was arrested, arguing that the "stop and search were illegal and were executed without a valid warrant." (Docket No. 615.) She also filed a Motion to Suppress Statements and a Motion to Suppress Fruits of an Unlawful Wiretap. (Docket Nos. 614 and 616.)  These pre-trial motions relating to discovery were withdrawn a little over two months later after Beasley entered into a plea agreement with the Government. (Docket No. 898.)

On December 2, 2015, Durham continued her representation of Beasley when he entered into a plea agreement with the government.  (Plea Hearing Minute Entry, Dec. 2, 2015, Docket No. 1047; Plea Agreement at 9, Dec. 2, 2015, Docket No. 1059.)  In the Plea Agreement, Beasley agreed that he was a career offender, because he had two prior felony controlled substance convictions and was over 18 at the time of this conviction, for a third controlled substance felony. (Plea Agreement at 5.)  However, because the career offender enhancement actually resulted in a lower offense level, Beasley's plea agreement noted that his sentencing guideline range would be calculated using Chapter 2 of the sentencing guidelines instead of Chapter 4.  (*Id.* at 6.)

Beasley's plea agreement sets out an expected guidelines sentencing range of 360 months to life imprisonment. (*Id.* at 7.) At Beasley's change of plea hearing, he repeatedly agreed that he understood the agreement. (Transcript at 23-31, June 8, 2017, Docket No. 2357).   The Court also repeatedly discussed the maximum and minimum penalties

associated with the plea, including specifically confirming with Beasley that he was facing a "30-year to life sentence." (*Id.* at 25.)

Durham represented Beasley throughout his sentencing.[1] (Minute Entry for Sentencing, May 10, 2017, Docket No. 2311.) At sentencing on May 10, 2017, the government moved for a downward departure based on Beasley's substantial assistance and recommended a sentence of 235 months. (Gov't. Position on Sentencing at 7, May 8, 2017, Docket No. 2301.) Beasley requested a sentence of 120 months. (Def. Position on Sentencing at 6, May 5, 2017, Docket No. 2297.) On May 10, 2017, the Court sentenced Beasley to 300 months imprisonment. (Judgment, May 12, 2017, Docket No. 2333.) Durham objected to the sentence. (Tr. Of Sentencing Hearing at 22, June 8, 2017, Docket No. 2358.)

Beasley appealed the sentence to the Eighth Circuit, arguing that the District Court had failed to adequately consider relevant mitigating factors. *United States v. Beasley*, 738 F. App'x 379 (8th Cir. 2018). The Eighth Circuit affirmed the sentence, and the Supreme Court declined to grant certiorari. *Id.; Beasley v. United States*, 139 S. Ct. 1638 (2019).

---

[1] Because Beasley was still on supervised release from the conviction in his 2010 case, Durham also represented him in his revocation hearing in that matter. (ECF No. 10-246, Docket No. 77.)

## II.  PROCEDURAL HISTORY

In May 2019, Beasley filed a Motion to Vacate his sentence pursuant to 28 U.S.C. § 2255, and over the next few months filed a series of supplemental papers. (Docket Nos. 2848, 2862, 2914.)  In January 2020, Beasley filed a Motion to Withdraw his § 2255 Motion, (Docket No. 2959), which the Court granted, (Docket No. 2971).  Shortly thereafter, Beasley filed supplementary briefing, adding additional claims to his Motion to Vacate under 28 U.S.C. § 2255.[2]  (Docket Nos. 2974 and 2975.)  It appears that Beasley intends for the Court to consider both his original claims in his first Motion to Vacate as well as any additional claims in his updated Motion to Vacate.  Accordingly, the Court will assume Beasley's initial motion was not withdrawn, but instead that all of the above filings should be construed together as one Motion to Vacation under § 2255.  *See, e.g.*, *Spencer v. Haynes*, 774 F.3d 467, 471 (8th Cir. 2014) ("We construe Spencer's pro se petition liberally. Here, an appropriate construction would be to recharacterize Spencer's claim into the correct procedural vehicle for the claim asserted.").  Because the Government responded to Beasley's 2019 filings and his 2020 filings separately (Docket Nos. 2913 and 3022), the Court will consider both replies.

## DISCUSSION

---

[2] Beasley also filed two sets of interrogatories with the Court intended for Caroline Durham and Deidre Aanstad.  (Docket Nos. 2976 and 2977.)

**I.    MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Section 2255 permits a prisoner to move the court that sentenced him to "vacate, set aside or correct the sentence" on "the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a). "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice."  *Walking Eagle v. United States*, 742 F.3d 1079, 1081–82 (8th Cir. 2014) (quoting *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996)).

In order to demonstrate ineffective assistance of counsel, defendants must show that "counsel's performance was deficient" which requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In the plea context, defendant must show that "counsel's representation fell below an objective standard of reasonableness."  *Engelen v. United States*, 68 F.3d 238, 241 (8th Cir. 1995) (quoting *Strickland*, 466 U.S. at 687–88).  "A strong presumption exists that counsel's conduct falls within the wide range of reasonable professional assistance." *Ramirez v. United States*, 751 F.3d 604, 607 (8th Cir. 2014) (cleaned up).

Defendant must also show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Engelen*, 68 F.3d at 241 (quoting *Strickland*, 466 U.S. at 694). "The court need not address both components if the movant makes an insufficient showing on one of the prongs." *Id.* (citing *Strickland*, 466 U.S. at 697).

### A. Purported Failure to Argue Fourth Amendment Violation

Beasley raises claims relating to an April 14, 2015 traffic stop and search of his vehicle. He argues that his counsel failed to investigate whether the search of his vehicle was a Fourth Amendment violation and failed to raise Fourth Amendment arguments. He also argues that she should have filed a motion to suppress, and that she should have challenged the stop.

But Durham *did* challenge the stop and search by filing a Motion to Suppress, the proper means of addressing a Fourth Amendment violation. *See, e.g., U.S. v. Mathias,* 721 F.3d 952, 955 (8th Cir. 2013) ("On review of a denial of a motion to suppress, we assess . . . whether challenged actions violated the Fourth Amendment de novo."). As such, Beasley's claims here are without merit; it certainly cannot be said that counsel's approach to the issue was objectively unreasonable, given that she attempted to do exactly what Beasley suggests she ought to have done.

### B. Conflict of Interest

Beasley also argues that because his attorney represented Damien Jones while continuing to represent Beasley, there was a conflict of interest. He asserts that Durham's representation of an unnamed individual who had made statements to tribal police that were used as evidence against him also a conflict of interest. It is unclear from the briefing but it appears that this unnamed individual may also be Jones.

Representation of multiple defendants, on its own, does not violate the Sixth Amendment "unless it gives rise to a conflict of interest." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980) (citing *Holloway v. Ark.*, 435 U.S. 475, 482 (1978)). When a defendant fails to raise an objection at trial, he or she must then "demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 348. In order to demonstrate adverse effect, a defendant must show that the conflict caused the attorney to make a prejudicial choice and that it had "some actual and demonstrable adverse effect on the case, not merely an abstract or theoretical one." *Covey v. United States*, 377 F.3d 903, 908 (8th Cir. 2004) (quoting *United States v. Flynn*, 87 F.3d 996, 1001 (8th Cir. 1996)).

Durham did not represent co-defendants in the same case, because Jones was not charged in this matter. To the extent that Beasley alleges that Jones was cooperating with authorities in this matter, Beasley does *not* allege that Durham was representing Jones at that time. Instead, his argument appears to be that her prior representation of Jones in Jones's firearms case was sufficient to create a conflict of interest here. Durham's representation of Jones and Beasley did overlap during November and early December

2015, but they were defendants in two separate and unrelated cases. Furthermore, Beasley has not demonstrated any prejudicial choice or adverse effect by Durham, much less one caused by a conflict of interest. Beasley appears to argue that Durham interfered to prevent Jones from being indicted, and that as a result, Beasley received less cooperation credit than he might have. Beasley has presented no evidence for this theory.

Additionally, Beasley's cooperation was already sufficient for the Government to recommend a substantial departure and a sentence of 235 months, and for Durham to request an even lower sentence. The Court, however, found that such a drastic downward departure was unwarranted, and sentenced Beasley to 300 months. As a result, Beasley can show no actual or demonstrable adverse effect on the case.

### C. Cooperation and Guilty Plea

Beasley argues that counsel was ineffective because she failed to advise him that the Court was not bound by the recommendations of either party when considering Beasley's sentence. Beasley asserts that if he had fully understood the consequences, he would not have cooperated in the first place. He also argues that his counsel was ineffective because she told him he would receive a sentence of no more than 12 years.

These arguments are without merit. Beasley began cooperating with the government in April 2015; a month before the indictment was issued, and eight months before Beasley entered into a plea agreement. Beasley's plea agreement sets out that his

stipulated sentencing range was 360 months to life imprisonment. The agreement states clearly that the Court will make its own determination about sentencing. The Court reiterated this fact at the change of plea hearing in advising Beasley that the sentencing guidelines were advisory to the Court. Furthermore, Beasley repeatedly agreed that he understood the agreement and its terms, including that he faced a 30-year to life sentence. As such, Beasley has made no showing of ineffective assistance of counsel.

### D. Sentencing Guidelines Enhancement of "Career Offender"

Beasley argues that counsel's failure to object to Career Offender status constitutes ineffective assistance of counsel.

But Beasley's plea agreement sets out clearly the fact that he is a career offender, based on his prior convictions and his age, and Beasley testified that he had reviewed the agreement, that he understood what it entailed, and that he agreed to its terms. He was provided an opportunity to ask questions or express any concern with the agreement, and he did not do so. Furthermore, as noted in the plea agreement, because of the nature of the sentencing guidelines, Beasley was not sentenced under the career offender enhancement. As such, Beasley has made no showing of ineffective assistance of counsel as to this claim.

### E. Downward Sentencing Departure

Beasley argues that his counsel was ineffective for failing to object to the Court's sentencing decisions. Such an objection is unnecessary, particularly when Counsel argues

persuasively for a shorter sentence. But Counsel did in fact object, on the record, at sentencing. Beasley has made no showing of ineffective assistance.[3]

### F. Evidentiary Hearing

Beasley also requested that the Court hold an evidentiary hearing on the issues raised in his section 2255 Motion. "A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief." *Engelen*, 68 F.3d at 240 (citing 28 U.S.C. § 2255). "Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Id.* (citing *United States v. Rodriguez*, 929 F.2d 747, 749–50 (1st Cir. 1991)). Here, Beasley's claims as to conflict of interest would fail even if accepted as true. The remainder of Beasley's allegations are contradicted by the record. Therefore, an evidentiary hearing in this matter is unnecessary and the Court will deny Beasley's claims of ineffective assistance of counsel without an evidentiary hearing.

---

[3] To the extent Beasley seeks to relitigate his claims that the Court failed to adequately consider the five factors under U.S.S.G. § 5K1.1, these arguments are without merit. The Eighth Circuit previously considered this argument on direct appeal and affirmed Beasley's sentence. *United States v. Beasley*, 738 F. App'x 379 (8th Cir. 2018).

## II.     CERTIFICATE OF APPEALABILITY

The Court may grant a certificate of appealability only where a petitioner "has made a substantial showing of the denial of a constitutional right."  *See* 28 U.S.C. § 2253(c)(2); *Copeland v. Washington*, 232 F.3d 969, 977 (8th Cir. 2000).  The petitioner must show that "the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."  *Flieger v. Delo*, 16 F.3d 878, 883 (8th Cir. 1994) (citing *Lozada v. Deeds*, 498 U.S. 430, 432 (1991)).  The Court finds it unlikely that another court would decide the issues raised in Beasley's motion differently and the issues are not debatable or deserving of further proceedings.  The Court thus concludes that Beasley has failed to make the required substantial showing of the denial of a constitutional right and will deny a Certificate of Appealability.

### ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendant's Motion to Vacate Sentence under 28 U.S.C. § 2255 [Docket Nos. 2848, 2862, 2914, 2974 and 2975] is **DENIED**.

2. To the extent that Defendant's Motion to Appoint Counsel [Docket No. 2887] was not already withdrawn, it is **DENIED** as moot.

3. Defendant's Request to Submit Interrogatories [Docket Nos. 2976 and 2977] is **DENIED** as moot.

4. The Court does **NOT** certify for appeal under 28 U.S.C. § 2253(c)(2) the issues raised in Defendant's motion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: August 12, 2020  
at Minneapolis, Minnesota.

_____  
JOHN R. TUNHEIM  
Chief Judge  
United States District Court